Nott, J.,
delivered tbe opinion of tbe court:
This is an action, under tbe Abandoned or captured property Act, to recover tbe net proceeds of 118 bales of cotton captured at Savannah, alleged to be of tbe value of $55,524.
Upon a former trial tbe court found tbe claimant to bave been tbe owner of tbe captured property, and that tbe proceeds thereof were in tbe Treasury, but held that bis proof of loyalty was defective, and dismissed tbe petition. The court did not find him to bave been guilty of disloyal acts, but merely that as to a portion of tbe period of tbe rebellion be bad failed to offer evidence.
Tbe case now comes before us on a motion to correct tbe judgment for error of law.
*394 The principal ground for the motion is that the court erred in requiring proof of loyalty, for the reason that if the claimant were guilty of giving aid and comfort to the rebellion the Proclamation 25th December, 1888, (15 Stat. L., p. 702,) absolved him. This is the important point in the case, and brings before us the recent decision of the Supreme Court in the case of Klein, and its effects upon similar suits still depending here. If this court erred in what has since been declared to be the law, the case still being before us, the party should not be put to the trouble and expense of an appeal to correct the error; but this court should administer the law precisely as it would have been administered if correctly understood when the case was formerly on trial.
And first, a distinction may be noted between the case decided by the Supreme Court and the one here depending. In the former- the party proved and relied upon his amnesty to absolve him from acts of which he had been adjudged guilty; in this case-the party maintains his innocency, but, failing to establish one link in the chain of his evidence, he falls back upon the proclamation of general amnesty, and claims that, whether innocent or guilty, it establishes his right to maintain his action.
It is perhaps logically correct to say that a pardon which restores the guilty cannot affect the innocent, and that a party seeking relief must stand upon the one ground or the other; but the law never requires to be done what is, in contemplation of law, an unnecessary act. Here, in contemplation of law, if a party was innocent, he is entitled to judgment, and if he was guilty he is .restored to innocence; and nothing can be gained on behalf of the defendants by the court inferring in the claimant an offense which, if it existed, the proclamation of general amnesty has absolutely swept away. Therefore we conclude that if this case can be sustained, and the decision of the Supreme Court has the scope and effect ascribed to it by the counsel of the claimant, and does declare the proviso to the Appropriation act 1870, (16 Stat. L., p; 235,) wholly unconstitutional and void, then that no evidence of loyalty will be hereafter necessary in this or any ordinary case depending in this court.
. It is, however, said that the case before the Supreme Court only involved the question of the jurisdiction of that court, *395 ancl only affects cases on appeal depending there; that the decision cannot be extended beyond the facts on which it rests, and does not control or apply to cases depending here.
I have already endeavored to show in a former case that there is a difference between the dicta of a judge and the alternative propositions of a court, and that a point involved may be a point determined. Where the facts present a number of points all going to the merits, it is within the proper office of a court to determine any or all of them; and where an appellate court has announced a decision upon several points involved, an inferior tribunal cannot select one of the points determined as the true resolution of the court and reject the others as needlessly decided. And I still think that the true and only rule in such a case is that every proposition of law enunciated, if actually involved in the facts before the court, is to be taken as a principle established, stare decisis. Maddox Case, (5 O. Cls. B., p. 372.)
The decision of the Supreme Court has for its subject ,the constitutionality of an act of Congress. The particular facts and circumstances of the case, through which the question of constitutionality was brought to a judicial determination, cannot affect or limit the judgment which the court has intended to pronounce. The only question that could be raised is whether these facts and circumstances did indeed involve a construction- of the statute. When that construction became necessary it was the act of Congress that was on trial, and not the mere issues of the suit, and it was the duty of the court to ■ determine whether the legislation of Congress was operative or inoperative — whether the statute was unconstitutional in whole or in part. The power to decree the acts of the legislature void is the most important ever confided to a court, affecting all citizens as well as the parties standing at its bar, and a rule that would require the construction of a single statute to be rendered piece-meal, as different cases might present different provisions, would be a rule mischievous and inconvenient. Therefore the question before us is simply this, what has the Supreme Court decided ?
The statute which is the subject of the decision contains several provisions, or classes of provisions, which may be the object of constitutional restriction :
1. It provides, among other things, tliat not even the Presi *396 dent’s general proclamation of amnesty “ shall he admissible in evidence in support of any claim,” or u to establish ■the standing of any claimant” in tbis court, or “ of Ms right to bring or maintain a suit therein.”
2. It provides, with respect to suits previously tried, that neither pardon nor amnesty, special nor general, shall be Uused or considered” by this court uin deciding upon the claim,” nor by the Supreme Court in cases on appeal.
3. It provides that where the loyalty of a party is involved in this court or on appeal, it shall not be established by u any ¡Executive proclamation, pardon, amnesty, or other act of condonation or oblivion.”
4. It provides that where judgments were already rendered on the faith of Executive pardons which are pending on appeal, the Supreme Court “ shall dismiss the same for wa/nt of jurisdiction.”
5. It provides that where a pardon has been accepted without written protestation of the party’s innocence, “ the pardon and acceptance shall be talcen and deemed” u conclusive evidence that such person did take part in” u the late rebellion,” and that u on proof of such far don and acceptance” “ the jurisdiction of the court in the case shall cease, and the court shall forthwith dismiss the suit.”
When the statute is thus analyzed with reference to its constitutional conditions, it will be observed, first, that there is but a single provision which distinctively appertains to the Supreme Court; second, that throughout its entire scope its provisions relate to, and interfere with, the administration of justice in the judicial department of the Government; third, that in like manner all of its provisions relate to, affect, and in part nullify the official acts of the Executive. Most certainly, therefore, was it within the properjudicial province of the Supreme Court to say that one provision of the act was unconstitutional because it conflicted with the distinctive constitutional duties of that court; or to hold that the entire act was unconstitutional because “ Congress has inadvertently passed the limit which separates the legislative from the judicial power ; ” or to hold further that the act is also unconstitutional because u its great and controlling purpose is to deny to pardons granted by thePresident the effect” which the judiciary has “ adjudged them to have,” .and its provisions are “ liable to just exception as impairing the *397 effect of a pardon and thus infringing the constitutional poiver of the Executive.” {Klein1 s Case.)
The decision turns not on the point of the Supreme Court’s distinctive constitutional powers, but is placed on the broader ground that the act infringes upon the proper powers and duties of the judicial and executive departments of the Government. “ It is,” says the opinion, “ the intention of the Constitution that each of the three great co-ordinate departments of the Government, the legislative, the executive, and the judicial, shall he, in its sphere, independent of the others.” And this act of Congress is held to be unconstitutional because by it the legislative department essayed on the one hand to impair the constitutional acts of the executive, and on the other to control the constitutional proceedings of the judiciary.
If any doubt remained as to the meaning of the extent of the Supreme Court’s decision, it would be dissipated by the fact that “ it was urged in argument ” in the court above, u that the right to sue the Government in the Court of Claims is a matter of favor,” and hence that Congress can prescribe the rule of decision in every case. To which the opinion of the Supreme Court replies that “ this seems not entirely accurate ;” “that it is as much the duty of the Government as of individuals to fulfill its engagements,” and that the Court of Claims is one of “ those inferior courts ichich Congress authorizes,” but which' exereises “ all the functions of a court.” It is the unquestionable intent of the decision that the statute is unconstitutional because it interferes with the proper administration of justice in the judicial department of the Government, of which the Court of Claims is an element; and that while Congress may Withdraw cases from its jurisdiction, or prescribe the terms and conditions, upon which actions maybe brought, yet Congress cannot prescribe to it a rule of decision, nor interfere with the proper' exercise of its judicial functions.
"It may be noted here that this part of the decision, Avhich received the unanimous assent of all the judges of the Supreme' Court in a suit where the nature, functions, powers, and duties, of the Court of Claims necessarily formed the foundation of the-whole case, overrules by necessary implication some of the very questionable utterances that found their way into the opinion of that court in the earlier case of De Groot, (5 Wall. 11., p. 432.)■ It is not possible to reconcile the present decision, that the-
- *398 legislature may not “prescribe rules of decision to the judicial department of the Government, in cases pending before it,” with the former dictum that “ Congress has the poioer” u to prescribe, the rule by which such cases may be determined ” in this court; u or prescribe in such cases the circumstances under which alone the ■ court may render a judgment against the Government.”
The decisions of the Supreme Court in the eases of Padelford and Klein, (ante,) though in form affirmances of the judgments of this court, do, in fact, overthrow two of its established doctrines. This court construed the Abandoned or captured property Act as a statute passed, midway in the rebellion, in the nature of a compact, whereby it was promised to. those persons within rebel territory who should stand firm in their allegiahce to the Government, that their property, captured and forfeited by capture, should, nevertheless, be cared for by the Government, and its avails, on proof of compliance with the condition precedent of the compact, be restored to them. Hence this court held that the words in the statute u aid or comfort to the rebellion,” related to the fact and not to the crime, and that pardon and amnesty, which obliterate crime, do not create a jurisdictional fact. The Supreme Court construed the statute as though it had been passed at the end of the rebellion, and ascribed the words uaid or comfort” to the crime and not to the fact; and hence held that pardon or amnesty, obliterating the crime, left the citizen free to maintain his right of action. The conclusion of either court would seem to be inevitable if its premises be conceded.
It was also the doctrine of this court that, as condemnation by a court is not necessary to divest title in cases of land capture, and that, as these captures were, in the language of the ■Supreme Court, “justified by legislation” and “warranted by ■law,” (Mrs. Alexander’s Case, 2 Wall. R., p. 420,) therefore the .legal title to the property became divested by capture and passed to the Government, with a reservation that the Government would hold the avails in trust for the benefit of such owners as “ in fact maintained a loyal adhesion to the Union.” (2 Wall. R., p. 422.) The Supreme Court, on the contrary, has now held that “ except as to property used in actual hostilities,” u no titles were divested in the insurgent States unless in pursuance of ■a judgment rendered after due legal proceedings ;” and as regards this abandoned or captured property whereof the proceeds are *399 iti tbe Treasury, that “the property of the original owner is, in no ease, absolutely divestedHow far this part of the decision, will disturb other rulings of this court it is not necessary now to inquire.
Upon the facts presented by this case the resolution of the court is that the Proclamation 25th December, 1868, (15 Stat. •L., p. 711,) relieves a citizen coming within its terms from making proof of loyalty; and upon this a majority of the judges who sit in the case are agreed. But it is also thought by my brother Milligan and myself that this general proposition must be taken with the qualification that if a special pardon is shown to have been previously accepted by a citizen, he is limited to it and bound by its conditions, and does not come within the terms of the proclamation.
The judgment of the court is that the claimant recover the net proceeds in the Treasury of 118 bales of cotton, captured at Savannah, being $175.83 per bale; amounting in the aggregate to $20,688.94.